# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ENDY DOMINGO CORNELIO,<br><br>Appellant. | No.  46733-0-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Endy Domingo Cornelio appeals his convictions for first degree child rape and three counts of first degree child molestation.  Cornelio was charged with sexually abusing AC,[1] a minor.  We hold that (1) Cornelio failed to preserve his challenge to the admission of AC's child hearsay statements under RCW 9A.44.120 and *State v. Ryan*[2] because he did not object below, but even if he did object, the trial court properly admitted AC's child hearsay statements, (2) the trial court did not err by admitting a nurse practitioner's testimony of AC's statements because AC's statements to the nurse practitioner during a medical examination were made for purposes of medical diagnosis or treatment under ER 803(a)(4), (3) the nurse practitioner's testimony did not invade the province of the jury because she did not testify that the sexual abuse occurred or that Cornelio was the abuser, (4) the trial court did not err by ruling that Cornelio could not cross-examine AC by using her out-of-court statements because AC's out-of-court statements

---

[1] Pursuant to General Order 2011-1, the name of minor(s) will be indicated with initials.  Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.

[2] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

were not inconsistent with her trial testimony, (5) the State presented sufficient evidence of oral to genital contact to support the sexual intercourse element of first degree child rape, (6) none of the prosecutor's actions constituted prosecutorial misconduct, and (7) Cornelio's ineffective assistance of counsel claims fail. Accordingly, we affirm Cornelio's convictions.

FACTS

In October 2012, AC disclosed to her mother, Tiffany Croll, that Cornelio had sexually abused her. At that time, AC was eight years old. The abuse occurred when she was four or five. Cornelio was AC's adult cousin.

The State charged Cornelio with first degree child rape and three counts of first degree child molestation. The information alleged that each count occurred between November 2007 and November 2009. The charge of first degree child rape was based on oral to genital contact between Cornelio and AC.

I. EVIDENTIARY MOTIONS

The State brought several evidentiary motions that were ruled on by the trial court before and during trial. The State moved (1) to admit AC's hearsay statements to Croll, and AC's hearsay statements to forensic child interviewer, Keri Arnold, (2) to admit AC's hearsay statements to a sexual assault nurse practitioner, Cheryl Hannah-Truscott, made during a medical examination, and (3) to exclude testimony of AC's past acts of lying and stealing, which the State characterized as "inadmissible character evidence." Clerk's Papers (CP) at 35.

No. 46733-0-II

A. AC'S HEARSAY STATEMENTS TO CROLL AND ARNOLD

The trial court held a hearing the first day of trial to determine the admissibility of AC's statements to Croll and Arnold under RCW 9A.44.120. Croll, Arnold, AC, and Jose Cornelio testified.

Croll explained that AC had first disclosed to Croll that Cornelio had abused her after AC overheard her mother on the telephone and AC thought that her mother was "saying that her dad had did something to her and she said it wasn't her dad, it was [Cornelio]." 1 Report of Proceedings (RP) at 100. Croll reported asking AC why she had not told her something earlier because Croll had questioned AC "multiple times" as a result of Croll seeing AC "trying to do stuff with dolls and her brother and sister." 1 RP at 99. Croll denied that AC had ever accused anyone else of sexually abusing her.

Croll explained that AC had been "a little instigator" when she was younger where AC would lie to get her sister and brother in trouble. 1 RP at 94. Croll stated that AC had been caught lying about stealing candy from the store or items from her cousin's house. When asked whether AC understood that stealing was wrong, Croll responded that AC was "getting there." 1 RP at 95-96.

The State also called Arnold to testify at the pretrial hearing. Arnold testified that she interviewed AC. Arnold explained that she would conduct a truth and lie exercise with her child interviewees and that she performed that exercise with AC. Arnold testified that AC appeared to understand the exercise. Arnold recalled that AC was able to promise to tell Arnold the truth without any difficulty. Similarly, Arnold testified that there was nothing during the interview that

3

gave her any concern that AC had been coached. Arnold reported that AC had disclosed to her that Cornelio abused her.

AC was called by the State to testify at the pretrial hearing. She testified that her mother had discussed with her the importance of telling the truth. And AC answered, "Yeah," when asked if she had told the truth about Cornelio touching her. 1 RP at 81. She explained that she had told Arnold everything.

AC's father, Jose Cornelio,[3] also testified at the pretrial hearing. He reported that AC never complained about Cornelio. He also testified that he was not aware of AC alleging that anyone else had sexually abused her. Jose denied ever speaking with AC about her allegations against Cornelio and denied telling AC what to say when she came to court. Jose explained that AC had been caught lying about fighting with her sister. In addition, he said that AC would admit that she lied.

The State argued that AC's statements to Croll and to Arnold were admissible under RCW 9A.44.120 and under the *Ryan* reliability factors. In response to the State's argument, Cornelio did not attempt to argue that the statements were inadmissible. Instead, defense counsel stated, "I think that the statute and the *Ryan* factors have been met by the State, and so I don't have a cogent argument to present that the State has not met under *Ryan* and the statute that the child's statements to others should come in." 2 RP at 140-41. The trial court admitted AC's statements

---

[3] Because the appellant and AC's father share the same last name, this opinion refers to Jose Cornelio by his first name to avoid any ambiguity. No disrespect is intended.

4

to Croll and to the child forensic interviewer under RCW 9A.44.120 and the *Ryan* reliability factors.

## B. AC'S STATEMENTS MADE FOR MEDICAL DIAGNOSIS OR TREATMENT

Also on the first day of trial, the trial court heard the State's pretrial motion to admit AC's statements made to Hanna-Truscott, an advanced registered nurse practitioner (ARNP), as admissible hearsay under ER 803(a)(4). The State argued that AC's statements to Hanna-Truscott were made for purposes of medical diagnosis or treatment of child sexual abuse. The State provided an offer of proof that Hanna-Truscott had performed a medical examination, as part of Hanna-Truscott's standard practice, and that AC had made a few statements to Hanna-Truscott during the examination. Cornelio argued that the purpose of Hanna-Truscott's medical examination was not for the purpose of gathering medical evidence and that testimony from Hanna-Truscott would be cumulative. The trial court ruled that AC's statements to Hanna-Truscott were admissible under ER 803(a)(4) because they were uttered for the purpose of medical diagnosis or treatment.

## C. EVIDENCE OF AC'S CHARACTER FOR LYING AND STEALING

Midway through trial, the State brought a supplemental motion in limine prohibiting the defense from eliciting testimony from the State's witnesses that AC had stolen and lied about various things in the past. The State argued that this motion was to exclude inadmissible character evidence of the victim. Cornelio's defense counsel stated that, "I think it's a well positioned [and] supported motion in limine, and I will attempt to, should the Court grant it, to follow it." 2 RP at 146. The trial court granted the State's supplemental motion in limine.

## II. TRIAL TESTIMONY

AC testified at trial. She testified that Cornelio frequently would spend the night at Jose's house. AC reported that she would sleep on a little couch in the front room and Cornelio would sleep on a big couch in the same room. AC testified that Cornelio would tell her not to tell her father and then would do things that she did not like. She testified that Cornelio grabbed her behind, touched the part of AC that she used to go to the bathroom, and made her touch his part that he used to go to the bathroom. AC testified that these things happened more than one time. She stated that AC put his mouth on her mouth, but denied that Cornelio put his mouth or tongue anywhere else on her body.

AC further testified that she did not tell her mother about the abuse when it was going on because Cornelio told her not to. Similarly, AC testified that she did not tell any other adult because she "didn't want to tell on him," and "felt like it was, like, none of their business." 6 RP at 508.

During cross examination of AC, Cornelio attempted to impeach AC's testimony with a transcript of AC's interview with defense counsel. The State objected, arguing that AC's out-of-court statement was not inconsistent with AC's trial testimony, and therefore did not fit within a hearsay exception. The trial court sustained the objection. Cornelio directed AC to a different page of the transcript, and the State again objected on the basis that defense counsel was not introducing an inconsistent statement. The trial court also sustained that objection.

Hanna-Truscott also testified at trial. She testified that she performed a sexual abuse examination on AC, while another nurse was present. The other nurse and Hanna-Truscott took AC's height and weight. Hanna-Truscott told AC that her "job was to do checkups on kids and

talk to them to make sure that they are healthy." 7 RP at 622. Hanna-Truscott also showed AC various types of medical equipment and explained how they would be used to check her body. Hanna-Truscott testified that she asked AC what AC had spoken to Arnold about and AC replied, "Him touching my private spot, my cousin." 7 RP at 622-23. Hanna-Truscott testified that she asked AC, "What's his name?" and AC identified Cornelio. 7 RP at 623. Subsequently, Hanna-Truscott stated that she asked AC if she had any questions and AC quietly told her, "Yes, I just wanted to tell you something. I don't really like people checking my private spot because I am just too embarrassed." 7 RP at 624. When Hanna-Truscott asked AC if anyone had ever checked her privates before, Hanna-Truscott testified that AC stated, "Only [Cornelio]." 7 RP at 624.

The trial court admitted a redacted videotape of Arnold's interview with AC.[4] Arnold had interviewed AC when she was eight years old, roughly two years before trial. This interview was played for the jury. When Arnold asked AC why she was there to speak with Arnold, AC replied she was there because Cornelio had done really bad stuff to her. AC told Arnold that Cornelio would (1) kiss her and tell her to touch his "private spot," which AC identified as what Cornelio used to go to the bathroom on his front, (2) close her hand around his private spot, which Cornelio made her rub, (3) lick her "private spot" which AC identified as what she used to go to the bathroom, and (4) rub her private spot. CP at 40, Ex. 1.

### III. CLOSING ARGUMENT

During closing argument, the prosecutor made a number of comments about AC's trial testimony. These comments included that (1) the jury should consider AC's demeanor in assessing

---

[4] A redacted copy, exhibit 1, of the interview appears to have been admitted by agreement of the parties.

her credibility, (2) it was difficult for AC to testify in front of the person that abused her, (3) AC's delayed disclosure was caused by fear of affecting her family, and (4) AC repeatedly had told the same story about the abuse. The prosecutor also commented about the thought process and motives of AC's father. Cornelio did not object to any of these comments.

## IV. JURY VERDICT

The jury found Cornelio guilty of all four counts, one count of first degree child rape and three counts of first degree child molestation. Cornelio appeals.

## ANALYSIS

### I. EVIDENTIARY RULINGS

Cornelio challenges several of the trial court's evidentiary rulings. We review a trial court's decision on the admissibility of evidence for an abuse of discretion. *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 295, 359 P.3d 919 (2015). A trial court abuses its discretion when its evidentiary ruling is manifestly unreasonable or based on untenable grounds. *Cayetano-Jaimes*, 190 Wn. App. at 295.

### A. CHILD HEARSAY STATEMENTS

For the first time on appeal, Cornelio challenges the admissibility of AC's child hearsay statements and argues the trial court ignored evidence relating to AC's trustworthiness and character and the spontaneity of her statements regarding the sexual abuse. We hold that Cornelio failed to preserve his challenge to the admission of AC's child hearsay statements.

Under RAP 2.5(a), we may refuse to review any claim of error not raised in the trial court except if the issue involves a manifest error affecting a constitutional right. Cornelio does not argue that this issue involves a manifest error affecting a constitutional right.

At the hearing regarding AC's hearsay statements, the State presented a detailed argument that AC's statements to her mother and Arnold were admissible under RCW 9A.44.120 and the *Ryan* factors.[5]

In response, Cornelio did not attempt to argue that the statements were inadmissible. Instead, defense counsel stated, "I think that the statute and the *Ryan* factors have been met by the State, and so I don't have a cogent argument to present that the State has not met under *Ryan* and the statute that the child's statements to others should come in." 2 RP at 140. Because Cornelio did not object to the admission of AC's child hearsay statements, he waived any objection on appeal under RAP 2.5(a). And even if he had objected, as discussed below in section IV, the trial court properly admitted AC's child hearsay statements under RCW 9A.44.120 based on the *Ryan* factors.

B. STATEMENTS FOR MEDICAL TREATMENT OR DIAGNOSIS

Cornelio argues that the trial court erred by admitting nurse practitioner Hanna-Truscott's testimony regarding AC's hearsay statements under ER 803(a)(4). We disagree.

1. Legal Principles

ER 803(a)(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as

---

[5] Under RCW 9A.44.120, hearsay statements of a child under the age of 10 are admissible in a criminal case when the statements describe sexual or physical abuse of the child; the court finds that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and the child testifies at the proceedings. In determining the reliability of child hearsay statements, the trial court considers the reliability factors stated in *Ryan*, 103 Wn.2d at 175-76.

reasonably pertinent to diagnosis or treatment." This exception applies to statements reasonably pertinent to diagnosis or treatment. *State v. Doerflinger*, 170 Wn. App. 650, 664, 285 P.3d 217 (2012). A statement is reasonably pertinent to diagnosis or treatment when (1) the declarant's motive in making the statement is to promote treatment and (2) the medical professional reasonably relies on the statement for purposes of treatment. *Doerflinger*, 170 Wn. App. at 664. We review a trial court's decision on the admissibility of evidence for an abuse of discretion. *Cayetano-Jaimes*, 190 Wn. App. at 295.

Child hearsay statements may be admissible under ER 803(a)(4) even if the child declarant does not understand that the statements were necessary for medical diagnosis or treatment. *State v. Florczak*, 76 Wn. App. 55, 65, 882 P.2d 199 (1994).[6] The hearsay statements of very young children are admissible if the corroborating evidence supports the child's statements and it appears unlikely that the child would have fabricated the cause of injury. *Florczak*, 76 Wn. App. at 65.

2. Medical Purposes

Cornelio first argues that AC qualifies as a very young child. Based on this argument, Cornelio further argues that it was likely that AC fabricated the abuse allegations. However, Cornelio does not explain why AC should be treated as a "very young child" or why young children cannot tell the truth. Br. of App. at 28-31.

---

[6] Normally, statements to medical providers identifying the perpetrator of a crime are not admissible under ER 803(a)(4). *State v. Ashcraft*, 71 Wn. App. 444, 456, 859 P.2d 60 (1993). However, there is an exception for child victims of sexual abuse. *Ashcraft*, 71 Wn. App. at 456-57. The rationale is that the identity of the abuser is relevant because part of reasonable treatment is to prevent recurrence and future injury. *State v. Williams*, 137 Wn. App. 736, 747, 154 P.3d 322 (2007).

AC spoke to Hanna-Truscott when she was eight years old. An eight-year-old generally would not constitute a "very young child" for purposes of the special rule for satisfying the medical motive requirement. In *State v. Kilgore*, the court stated that a child who was almost 11 years old was not a "very young child." 107 Wn. App. 160, 183-84, 26 P.3d 308 (2001). The rule is designed for much younger children, such as the three-year-old in *Florczak*. 76 Wn. App. at 66-67 (holding that three-year-old's hearsay statements were sufficiently reliable to be admissible because the child's emotional state and behavior while reporting corroborated her out-of-court statements). For the purposes of Cornelio's appeal, we do not consider AC to be a very young child.

Applying the normal motive requirement to AC, the question is whether AC knew that she was giving statements for purposes of medical treatment or diagnosis. AC was seen in a pediatric examination room, and another nurse was present along with Hanna-Truscott. They took AC's height and weight. Hanna-Truscott told AC that her job was to "do checkups on kids and talk to them to make sure that they are healthy." 7 RP at 622. Hanna-Truscott also showed AC various types of medical equipment and explained how they would be used to check her body. There is no indication that AC did not understand that the purpose of her visit was medical treatment.

Cornelio also argues that regardless of AC's knowledge, her statements were not made for purposes of medical diagnosis or treatment because AC refused to undergo a physical examination. He argues that Hanna-Truscott's interview essentially was a forensic investigation rather than part of a medical examination.[7]

---

[7] Cornelio does not argue that Hanna-Truscott did not reasonably rely on AC's statement for purposes of treating AC.

However, Hanna-Truscott, who is a nurse practitioner, testified that she conducted "medical evaluations" of sex abuse victims. 7 RP at 603. These evaluations included taking a very complete history from the victim or a parent and conducting a physical examination. And then she provides a diagnosis assessment and a treatment plan.

Here, AC refused to allow a physical examination of her genital and anal areas. However, Hanna-Truscott did begin a physical examination of AC before she sat down to question AC and received some information from her about what had happened to her. Hanna-Truscott questioned AC about whether the abuse had caused any pain or bleeding. And Hanna-Truscott made an assessment that focused on sexual abuse risk factors and referred AC to counseling. This evidence was sufficient to allow the trial court to determine in the exercise of its discretion that AC's statements were made for purposes of medical diagnosis or treatment.

We hold that the trial court did not abuse its discretion in admitting Hanna-Truscott's testimony about AC's statements for purposes of medical diagnosis or treatment of child abuse under ER 803(a)(4).

C. TESTIMONY ABOUT SEXUAL ABUSE

Cornelio next argues that Hanna-Truscott invaded the province of the jury by implicitly stating that abuse occurred and that Cornelio was the perpetrator.[8] We disagree.

---

[8] Cornelio also asserts—in one sentence each—that Hanna-Truscott's testimony should have been excluded because it was (1) cumulative in light of Arnold's testimony regarding AC's statements and (2) prejudicial under ER 403. However, he presents no arguments on these issues. Therefore, we decline to address these arguments. RAP 10.3(a)(6); *State v. Mares*, 190 Wn. App. 343, 355, 361 P.3d 158 (2015).

Cornelio relies on *Florczak*, where the court examined whether an expert's testimony regarding sexual abuse amounted to manifest constitutional error because it invaded the province of the jury. 76 Wn. App. at 74. In that case, an expert opined that the victim's diagnosis of post-traumatic stress syndrome was secondary to sexual abuse. *Florczak*, 76 Wn. App. at 74. The court stated that this was an improper opinion regarding an ultimate fact. *Florczak*, 76 Wn. App. at 74. Further, the court stated that because the two defendants were implicated as the only possible abusers, the expert's testimony amounted to an improper opinion that they were guilty. *Florczak*, 76 Wn. App. at 74.

Cornelio focuses on Hanna-Truscott's statements that she wanted to "make sure that we are identifying the person that may have committed the assault," and that she "would like to validate the person who may have committed the assault." 7 RP at 614, 617. Cornelio reads these statements together with Hanna-Truscott's testimony that AC identified Cornelio as the person who abused her. He argues that these statements demonstrate that Hanna-Truscott "has implicitly diagnosed sexual abuse . . . [and] thereby render[ed] an opinion that abuse had occurred." Br. of App. at 31.

However, unlike in *Florczak*, Hanna-Truscott did not give an opinion that AC had suffered sexual abuse. The statements Cornelio challenges addressed the general procedure for speaking with an alleged victim of sexual abuse. When testifying specifically about AC, Hanna-Truscott did not give an opinion that AC had been abused or that Cornelio was the abuser. She simply recounted AC's statements regarding the abuse, which were admissible under ER 803(a)(3).

We hold that Hanna-Truscott's testimony that AC had told her that she had suffered sexual abuse did not invade the province of the jury.

13

D.  PRIOR CONSISTENT STATEMENTS

Cornelio argues that the trial court erred in ruling that he could not cross examine AC using her prior statements that she had made in an interview with defense counsel before trial.  We disagree.

Cornelio argues that AC's prior statements were admissible to impeach her under ER 613(b).  Under ER 613(b), "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon."

Here, during his cross examination of AC, defense counsel attempted to use two portions of an out-of-court interview AC gave to him before trial: (1) where AC did not have an answer when asked why she did not tell her mother that she did not want to go back to her father's house or did not want Cornelio at her father's house and (2) where AC explained that she told her mother of the alleged abuse because her mother would repeatedly ask whether AC's father did something to her and AC had gotten tired of her saying that all the time.  The State objected to Cornelio reading those passages because they were not inconsistent with AC's trial testimony, and the trial court sustained the objection.

Under ER 613(b), AC's out-of-court statements were only admissible to impeach if they were inconsistent with AC's trial testimony.  However, Cornelio does not identify any portion of AC's trial testimony that he believes was inconsistent with her out-of-court statements, and he does not provide any argument on this issue.  Cornelio argues only that defense counsel properly showed AC her statement as required to impeach her under ER 613(b).  This is not sufficient to demonstrate that AC's out-of-court statements met the requirements of ER 613(b).

14

Because Cornelio fails to demonstrate that AC's out-of-court statements were inconsistent with her trial testimony, we hold that the trial court did not abuse its discretion in ruling that Cornelio could not use AC's hearsay statements during cross-examination.

## II. SUFFICIENT EVIDENCE FOR FIRST DEGREE CHILD RAPE

Cornelio argues that there was insufficient evidence to support the jury's verdict finding him guilty of first degree child rape because at trial AC denied the conduct underlying the charge of first degree rape.[9] We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Homan*, 181 Wn.2d at 106. Credibility determinations are made by the trier of fact and are not subject to this court's review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Miller*, 179 Wn. App. at 105. We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

In order to prove first degree child rape, the State had to show that (1) Cornelio had sexual intercourse with AC, (2) AC was less than 12 years old and not married to Cornelio, (3) Cornelio

---

[9] Cornelio also argues that AC had been exhibiting sexualized behavior several months before the alleged molestation. However, he fails to explain how this evidence is material to whether he had sexual intercourse with AC. Therefore, we decline to address this argument.

was more than 24 months older than AC, and (4) the acts occurred in Washington. RCW 9A.44.073. The definition of "sexual intercourse" includes any acts "involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex." RCW 9A.44.010(1)(c). Cornelio only challenges the sexual intercourse element.

Here, the State presented AC's videotaped interview with Arnold, in which AC stated that Cornelio licked her "private spot." CP at 40, Ex. 1. In her trial testimony, AC denied that Cornelio had placed his mouth anywhere other than her mouth. Cornelio argues that this inconsistent testimony means that there is insufficient evidence of sexual intercourse.

However, AC's trial testimony simply created a conflict in the evidence. The jury's role is to resolve such conflicts. The jury had to determine whether AC's statement to Arnold or her trial testimony was more credible. Because the jury convicted Cornelio of child rape, it necessarily believed that AC's earlier statement was true. We do not interfere with a jury's weighing of conflicting evidence. *Thomas*, 150 Wn.2d at 874-75.

Cornelio relies on *State v. Alexander*, 64 Wn. App. 147, 822 P.2d 1250 (1992), to argue that the State failed to present sufficient evidence of first degree child rape because AC's testimony was inconsistent. In *Alexander*, Division One of this court overturned multiple child rape convictions, in part because of extreme inconsistencies in the child victim's testimony at trial. 64 Wn. App. at 157-58. However, the court also held that the victim's testimony was impermissibly bolstered, the prosecutor's questioning elicited impermissible evidence that the defendant was the abuser, and the prosecutor's attempts to repeatedly instill inadmissible evidence in the juror's minds amounted to misconduct. *Alexander*, 64 Wn. App. at 153-56. As a result, the court reasoned that "[w]e cannot conclude that a rational jury would have returned the same verdict

16

had . . . [the] bolster[ed] testimony and the prosecutor's improper remarks been properly excluded." *Alexander*, 64 Wn. App. at 158.

*Alexander* does not support the proposition that evidence is insufficient if a victim contradicts her prior statement on an issue. The court simply held that, under the unique facts of that case, because of the "extreme" inconsistencies in the victim's testimony coupled with other errors, the evidence was too "confused" to allow the jury to find the defendant guilty. *Alexander*, 64 Wn. App. at 158. Therefore, we hold that *Alexander* is inapplicable.

AC's statements to Arnold provide sufficient evidence that Cornelio engaged in sexual intercourse with AC. The jury was free to disregard AC's contrary trial testimony. Therefore, we hold that viewing the evidence in the light most favorable to the State it produced sufficient evidence to support Cornelio's first degree child rape conviction.

## III. PROSECUTORIAL MISCONDUCT

### A. LEGAL PRINCIPLES

Prosecutorial misconduct is grounds for reversal if the prosecuting attorney's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011); *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Generally, a prosecutor's improper comments are prejudicial only where "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" *Thorgerson*, 172 Wn.2d at 442-43 (alteration in the original) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

When the defendant fails to object to the challenged portions of the prosecutor's argument, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-

intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760-61. Here, Cornelio did not object during the prosecutor's closing argument.

## B. COMMENTING ON AC'S DEMEANOR

Cornelio argues that the prosecutor engaged in misconduct by stating that the jury should consider AC's demeanor in assessing her credibility. We disagree.

Cornelio challenges the prosecutor's following comments:

> In considering [AC's] credibility, that is central to the issue, central to why we are here is [AC's] credibility. Is she telling the truth? Her demeanor, clearly, was quiet. She did not want to talk really at all unless she had to, but that was especially true, it seems, when she had to talk about the actual acts of abuse. Often, I submit to you, she would shut down, and again, it is your job to determine her credibility. It's up to you to determine what you thought her demeanor was like. But I submit to you that when it got too hard for her to talk any more, especially about what the Defendant did to her, she would kind of shut down, become closed off. And this is something that Ms. Croll testified [AC] did back when [AC] told her and Ms. Croll tried to find out more. [AC] just kind of shut down. She didn't want to talk more about it.

7 RP at 676-77. However, Cornelio does not explain why these comments are improper.

In determining credibility, the jury instructions allowed the jury to consider "the manner of the witness while testifying." CP at 79. And a prosecutor may argue reasonable inferences from the evidence regarding the credibility of a witness. *Thorgerson*, 172 Wn.2d at 448. Therefore, we hold that the prosecutor's comments regarding AC's demeanor were not improper.

## C. PRESUMPTION OF INNOCENCE

Cornelio argues that the prosecutor improperly presumed that Cornelio was guilty during her closing argument by stating that AC was forced to testify in front of the person that abused her. We disagree.

Cornelio challenges the prosecutor's following comments:

> We are now here almost two years later and she is in a courtroom, not a one-on-one with Ms. Arnold, but she is in a courtroom with, again, you jurors as a group of strangers, everyone else strangers, and having to say the words, having to talk about sexual acts which no one would want to talk about in front of others, especially strangers. She is having to talk about that here, and *also in front of the person that did it to her.* So, please, keep that in mind when you are weighing how she appeared on the stand, and how she was able to testify, and things that she was able and not able to say.

7 RP at 677-78 (emphasis added). Cornelio apparently argues that the prosecutor ignored the presumption of innocence by stating that Cornelio "did it to her." 7 RP at 678.

A prosecutor has wide latitude to argue reasonable inferences from the evidence. *State v. Robinson*, 189 Wn. App. 877, 882, 359 P.3d 874 (2015). Here, there was evidence in the record that Cornelio did in fact abuse AC. A prosecutor is not precluded from arguing from the evidence and testimony that the defendant is guilty. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). Therefore, we hold that the prosecutor's comments were not improper.

D. DELAYED REPORTING OF ABUSE

Cornelio argues that the prosecutor improperly argued that AC's delayed disclosure was caused by fear of affecting her family. We disagree.

Cornelio challenges the prosecutor's following comments:

> Remember what Ms. Arnold and Ms. Hanna-Truscott said about delayed disclosure, which again, is a factor here.
>
> It's extremely common for children to delay disclosing, and this is especially true when it's a family member.

. . . .

There are many reasons, as Ms. Arnold said, but oftentimes a central one that she sees over and over again is fear.

. . . .

There is also the issue of the family. This is another stem of the fear. Children sometimes have a fear that if I tell on this family member, what's it going to do to my family? How is it going to affect how everyone acts around each other and the things that we do together. Everything will be different. It will change.

So consider that the Defendant is [AC's] father's nephew. Jose Cornelio testified he is very close to his nephew. He is very close to his sister, who is his nephew's mother. Mr. Cornelio saw the Defendant every day while the Defendant was growing up. The Defendant is someone that Mr. Cornelio wanted to have him stay with him when Ms. Croll moved out and left.

7 RP at 678-81. Cornelio argues that these comments shifted the burden of proof because they imply that AC was abused and the abuse was done by a family member.

Once again, a prosecutor has wide latitude to draw and express reasonable inferences from the evidence. *Robinson*, 189 Wn. App. at 882. Hanna-Truscott testified that child sexual assault victims may delay disclosure until they feel comfortable, or the victim may feel guilty, shameful, or unsafe disclosing the abuse. The prosecutor's argument reasonably draws the inference that this could be one reason for the delay between the alleged abuse and AC's disclosure. Therefore, we hold that the prosecutor's comments were not improper.

E. REPETITION OF STATEMENTS

Cornelio argues that the prosecutor improperly tried to bolster AC's credibility by relying on the repetition of AC's statements to Croll, Arnold, and Hanna-Truscott that Cornelio had touched her. We disagree.

Cornelio challenges the prosecutor's following comments:

[AC] gave a very detailed disclosure. She has continued to say over the years, and it has been years, remember she is ten now, she has consistently said that she had

20

been touched, she had to touch him, and he, the Defendant, is the one that did it. That's the evidence that you have.

7 RP at 711. Cornelio argues that it is improper to rely on the repetition of AC's statements.

Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness. *Thorgerson*, 172 Wn.2d at 443. Here, the prosecutor was not impermissibly bolstering AC's credibility because there was evidence in the record that AC had been alleging that Cornelio had touched her and made her touch him for two years. AC first reported the alleged abuse when she was eight. AC was 10 years old when she testified at trial. When AC spoke with Arnold, AC alleged that Cornelio had touched her and she had touched him. AC's allegation of this abuse—where she touched Cornelio and he touched her—did not change at trial.

There is nothing improper about pointing out that a witness repeatedly has given the same account of events when arguing credibility. Therefore, we hold that the prosecutor's comments were not improper.

F. COMMENTING ON AC'S FATHER'S TESTIMONY

Cornelio argues that the prosecutor improperly speculated on the thought process and motives of Jose, AC's father. We disagree.

Cornelio challenges the prosecutor's following comments:

Consider the struggle when you are weighing [Jose's] credibility. As anyone would, he struggled with memory recalling when things happened and the details of what happened. This is normal. . . . [I]t's difficult to put the pieces together to give an accurate timeframe. People will and do struggle with that, adults do. Yet, he is certain, he maintained that his daughter [AC] always slept with him in his room, and the defendant, when he would sleep over, slept in the living room. I submit to you, though, that common sense will tell you that when people are essentially living in the same house, if they are staying overnight for days at a time,

it's easy for there to be a few minutes alone together, and that's all the time touching takes is just a few minutes.

. . . .

Why would [AC] lie about this if she knows obviously that her father was there as well and would be contradicting her, would be telling everyone that, no, [AC] slept in the bedroom at night with me, every single night she was there.

I submit to you that it's very likely, and again, this is up to you, it's your decision to weigh people's credibility, but I submit to you that this is a reasonable argument. [Jose] does not want to believe that this could have happened. He doesn't want to believe that his daughter was touched by his nephew in his house. And so he wants to make it seem as though it were not possible for it to happen, but it's always possible. When people are in a house together, like I said, not just paths crossing for a few minutes, but essentially living, you are sleeping there, you will always be able to have a moment alone.

7 RP at 686-688. Cornelio argues that these comments represented improper speculation.

A prosecutor has wide latitude to argue reasonable inferences from the evidence respecting the credibility of a witness. *Thorgerson*, 172 Wn.2d at 448. Here, the prosecutor drew a reasonable inference that Jose's credibility might be less reliable because the defendant was his nephew. Therefore, we hold that the prosecutor's comments were not improper.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Cornelio argues that his trial court defense counsel was ineffective because he (1) failed to object to the admission of AC's hearsay statements to Croll and the forensic child interviewer, (2) failed to object to a motion in limine preventing him from asking AC's parents about her propensity to lie and steal, (3) failed to object to excluding a line of inquiry that Croll suspected that AC's father was having sexual relations with Croll's sister, (4) failed to object to Hanna-Truscott's testimony regarding AC's hearsay statements made during a medical examination, and (5) failed to object to the alleged prosecutorial misconduct. We disagree.

22

A. LEGAL PRINCIPLES

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

We begin with a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. To demonstrate deficient performance the defendant must show that, based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. *Emery*, 174 Wn.2d at 755. Trial counsel has wide latitude in the choice of tactics. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 736, 16 P.3d 1 (2001). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

B. ADMISSION OF CHILD HEARSAY EVIDENCE

Cornelio argues that his defense counsel was ineffective for failing to object to the trial court's admission of AC's hearsay statements to Croll and Arnold. We disagree.

Here, even assuming without deciding that defense counsel was deficient in failing to object, Cornelio still must demonstrate prejudice—that there is a reasonable probability that the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. Even though Cornelio

failed to object, the trial court provided a detailed analysis of the *Ryan* factors and concluded that AC's hearsay statements were admissible under RCW 9A.44.120. Under these circumstances, there is no indication that the trial court's ruling would have been different even if Cornelio had objected.

However, if Cornelio had objected at trial, he would have preserved the child hearsay issue for appeal. Therefore, if the trial court erred in admitting AC's hearsay statements identifying Cornelio as the perpetrator of the abuse, he would be able to demonstrate prejudice. As a result, we must determine whether the trial court erred in admitting AC's hearsay statements under the *Ryan* factors.

In determining the reliability of child hearsay statements under RCW 9A.44.120, the trial court considers the *Ryan* reliability factors:

> (1) whether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the statement contained express assertions of past fact, (7) whether the declarant's lack of knowledge could be established through cross examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.

*State v. Kennealy*, 151 Wn. App. 861, 880, 214 P.3d 200 (2009). No single *Ryan* factor is decisive, but the factors must be "'substantially met'" to indicate sufficient reliability. *Kennealy*, 151 Wn. App. at 881 (quoting *State v. Griffith*, 45 Wn. App. 728, 738-39, 727 P.2d 247 (1986)). We review a trial court's decision to admit child hearsay statements for an abuse of discretion. *Kennealy*, 151 Wn. App. at 879.

Here, even though the trial court accepted the defense's concession as to the admissibility of AC's hearsay statements to Croll and Arnold, the trial court still analyzed the *Ryan* factors and held that they were substantially met.[10] Cornelio challenges this determination, arguing that the trial court failed to address issues of AC's character and trustworthiness (factor two), and the spontaneity of AC's statements (factor four) before ruling that AC's statements were reliable.

As to factor two, Cornelio argues that the trial court ignored evidence that AC's parents testified that she had lied and stolen before. The trial court addressed this factor on the record stating,

> The <u>Ryan</u> factor regarding her general character suggesting trustworthiness certainly is difficult with a ten-year-old, given the age of the alleged victim and the ability of the Court to assess character evidence. She is or appears to be quite shy and quiet in her speech, both here in the courtroom and during the interview. As discussed earlier, it was difficult to hear her during the forensic interview. She appears to be bright, and the Court finds no disputed testimony to suggest other than trustworthiness, and considering the first factor on whether there was an apparent motive to lie.

2 RP at 142. As Cornelio highlights, there also was evidence in the record that AC had lied before to get her siblings in trouble, which he argues the trial court failed to address on the record.

---

[10] The trial court found that: (1) AC had no apparent motive to lie because testimony was presented that AC and the defendant spent time together and seemed to get along, (2) AC had a character suggesting trustworthiness because there was no disputed testimony suggesting otherwise, (3) more than one person had heard AC's statements because she disclosed to Croll and Arnold, (4) AC's statements to Croll and Arnold were spontaneous because Croll's initial inquiry was not leading and Arnold's questions were open-ended after which AC began to talk, (5) the timing of AC's statements was trustworthy because even though there was a four-year delay in reporting AC disclosed to Croll after overhearing her mother accuse her father of abuse and disclosed to Arnold during open-ended questioning, (6) AC had the ability to recall past events because she testified regarding holiday events from years prior and where she went to school for the last four years, and (7) there were no surrounding circumstances suggesting that AC misrepresented Cornelio's involvement because there was no testimony that AC identified anyone other than Cornelio in the case. The trial court found that factors six and seven did not apply under the current case law.

The trial court was required to assess AC's character to determine her "reputation for truthfulness." *Kennealy*, 151 Wn. App. at 881. There was evidence that the trial court considered that AC lied to get her siblings in trouble, lied about fighting with her sister, and lied about stealing candy from the store or from her cousin's house. This evidence suggested that AC had lied several times over the course of her life, but not that AC lied frequently or had a general reputation for untruthfulness. Based on this evidence, the overall testimony does not suggest that AC had a reputation for not telling the truth. Accordingly, we hold that factor two weighed in favor of a finding that AC's hearsay statements had a sufficient indicia of reliability.

As to factor four, Cornelio argues that AC's disclosure of the abuse was not spontaneous, but was made after years of pressure to admit that she was abused and to disclose the abuser. Cornelio's argument seems to suggest that AC's mother and grandmother coached her for years to identify someone as the perpetrator of alleged sexual abuse. However, Cornelio's argument mischaracterizes how this court addresses the spontaneity of a child's statements.

"[F]or purposes of determining the reliability of a statement made by a child victim of sexual abuse, any statements made that are not the result of leading or suggestive questions are spontaneous" for the purposes of assessing their reliability. *In re Dependency of S.S.*, 61 Wn. App. 488, 497, 814 P.2d 204 (1991). Here, AC's statement to Croll was made because AC purportedly believed that Croll thought AC's father was abusing her. And AC's statement to Arnold was made in response to a series of open-ended questions. AC's statements to Croll and Arnold were spontaneous.

26

Cornelio does not challenge the trial court's findings that the first, third, fifth, eighth, and ninth *Ryan* factors were met.[11] However, there is sufficient evidence in the record to support the trial court's findings that these factors were met.

Here, even assuming that the trial court failed to consider evidence of AC's prior acts of lying or stealing, Cornelio fails to demonstrate that the trial court's decision to admit AC's hearsay statements was unreasonable under the circumstances when the *Ryan* factors were substantially met, and AC's hearsay statements had sufficient indicia of reliability under RCW 9A.44.120(1).

Because the trial court did not abuse its discretion in admitting AC's hearsay statements to Croll and Arnold, Cornelio fails to establish that he was prejudiced by his defense counsel's failure to object to the admission of AC's hearsay statements. Therefore, we hold that Cornelio's ineffective assistance of counsel claim on this basis fails.

C.  EXCLUSION OF EVIDENCE REGARDING AC'S PAST ACTS OF LYING AND STEALING

Cornelio argues that his defense counsel was ineffective for failing to object to the State's motion in limine to prevent any inquiry by the defense into AC's past instances of lying and stealing as inadmissible character evidence.[12] We disagree.

---

[11] The trial court did not address the sixth or seven factors. With regard to the seventh factor, the Supreme Court has held that this factor does not apply where the child testifies. *State v. Woods*, 154 Wn.2d 613, 624, 114 P.3d 1174 (2005).

[12] In Cornelio's appellate brief, he characterizes the State's motion in limine as "preventing him from inquiring of Ms. Croll and Mr. Cornelio regarding AC's propensity to lie and steal." Br. of App. at 44. However, this characterization of the State's motion in limine appears to be inaccurate. The majority of the State's motion is spent arguing why AC's past acts of lying or stealing constituted inadmissible character evidence under ER 608.

Cornelio cites to ER 608(b) to support his argument that his defense counsel's failure to object was deficient. ER 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Cornelio argues that his defense counsel's failure to object to this motion in limine was particularly deficient because a child witness's credibility is especially relevant in a child sexual abuse case.

Here, assuming without deciding that Cornelio's defense counsel was deficient, Cornelio does not argue that attacking AC's character for truthfulness would have changed the outcome in his case. He fails to show any prejudice from defense counsel's allegedly deficient performance. *Grier*, 171 Wn.2d at 32-33. Therefore, we hold that Cornelio's ineffective assistance of counsel claim on this basis fails.

D. EXCLUSION OF EVIDENCE REGARDING AC'S FATHER

Cornelio argues that his defense counsel was ineffective for failing to object to the State's motion to exclude Croll's statement that she suspected Jose of having sexual relations with her sister when her sister was under sixteen. We disagree.

The State argued that Croll's statements would be improper character evidence and requested that any reference to an alleged relationship be excluded. Defense counsel stated, "I do not plan to get into this . . . . It may come up through some back door, but I am not going to directly inquiry of anyone." 7 RP at 540.

28

Cornelio argues that evidence of Croll's suspicions about Jose may have indicated that she had a proclivity to suspect sexual abuse and that fact could have been used to impeach her testimony about AC's sexualized behavior. However, Cornelio does not identify any applicable rule of evidence under which this evidence would have been admissible, thereby showing that his defense counsel's failure to object was deficient. Similarly, Cornelio fails to demonstrate any prejudice arising from defense counsel's failure to object. Cornelio's ineffective assistance of counsel claim on this basis fails.

E. AC'S HEARSAY STATEMENTS AND PROSECUTOR'S STATEMENTS

As previously analyzed above, the trial court did not err in admitting Hanna-Truscott's testimony of AC's statements under ER 803(a)(4) and the prosecutor's comments made during her closing argument were not prosecutorial misconduct. Thus, Cornelio's defense counsel was not deficient in failing to object to Hanna-Truscott's testimony or the prosecutor's comments. Cornelio's ineffective assistance of counsel claim fails.

V. CUMULATIVE ERROR

Cornelio contends that the cumulative error doctrine entitles him to relief because the combined effect of the alleged errors denied him a fair trial. Under the cumulative error doctrine, we may reverse a defendant's conviction when the combined effect of trial errors effectively denies the defendant his or her right to a fair trial, even if each error alone would be harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). But because Cornelio has failed to show any prejudicial errors affecting his conviction, his argument fails.

No. 46733-0-II

CONCLUSION

Accordingly, we affirm Cornelio's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

We concur:

_____
MAXA, A.C.J.

_____
MELNICK, J.